U.S. COURTS

JAN 20 2026

Rcvd_____Filed_____time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF IDAHO

Ex parte:
Courtney Anne Kelton,
Petitioner,


v.



THE DIRECTOR OF THE IDAHO DEPARTMENT OF CORRECTION,
in his or her official capacity as the officer asserting and executing custody under color of Idaho judgment,

Respondent.



On Petition for Writ of Habeas Corpus
and Writ of Quo Warranto
for Immediate Termination of Unlawful Custody

**TABLE OF CONTENTS**

Caption ............................................................................................................................... 1

Table of Contents ................................................................................................................ 2

Table of Authorities ........................................................................................................... 3

I. Introduction and Nature of the Proceeding ................................................................. 5

II. Statement of Custody and Standing ............................................................................ 6

III. Jurisdictional Statement

*(Grounded in the Northwest Ordinance, the Judiciary Act of 1789, and the Habeas Corpus Act of 1867)* ................................................................................................................................ 8

IV. Nature of the Writs Sought

*(Habeas Corpus and Quo Warranto)* ............................................................................... 11

V. Statement of Undisputed Facts ................................................................................... 14

VI. Constitutional and Enacted Authority Framework

*(Source and Limits of Judicial and Executive Power)* ...................................................... 17

VII. Identification of Presumptions Asserted by Respondent ........................................ 20

VIII. Rebuttal of Presumptions and Failure of Proof

*(Absence of Lawful Authority for Continued Custody)* .................................................... 23

IX. Immediate Unlawfulness of Continued Restraint ..................................................... 25

XI. Summarization and Demand for Termination of Custody ........................................ 26

XII. Notice-Trigger and Enforcement Consequence Clause ........................................... 28

Certification ....................................................................................................................... 29

Verification ........................................................................................................................ 29

Validation ........................................................................................................................... 30

Certificate of Service ......................................................................................................... 31

**TABLE OF AUTHORITIES**

**CONSTITUTIONAL TEXTS**

**Preamble to the Constitution of the United States**
*(Statement of purpose; source of delegated authority; limitation on governmental power)*

**Amendment I** — Freedom of speech, press, assembly, and petition
**Amendment IV** — Security against unreasonable searches and seizures
**Amendment V** — Due process of law; protection of liberty
**Amendment VI** — Rights of the accused
**Amendment VIII** — Prohibition of excessive bail and cruel punishment
**Amendment IX** — Reservation of unenumerated rights
**Amendment X** — Reservation of powers not delegated

**ENACTMENTS OF CONGRESS (ORIGINAL LEGISLATIVE AUTHORITY)**

**Northwest Ordinance of 1787**,
re-enacted by **Act of Aug. 7, 1789, ch. 8, 1 Stat. 50**
*(Source of civil liberty guarantees; binding compact; jurisdictional limitation on territorial and successor governments)*

**Judiciary Act of 1789**, ch. 20, **1 Stat. 73**
*(Creation and limitation of federal judicial power; issuance of writs; separation of judicial and executive authority)*

**Civil Rights Act of 1866**, ch. 31, **14 Stat. 27**
*(Protection of personal liberty against state action under color of law)*

**Habeas Corpus Act of 1867**, ch. 28, **14 Stat. 385**
*(Expansion of federal habeas jurisdiction to all persons restrained of liberty in violation of the Constitution or laws of the United States)*

**Enforcement Act of 1871 (Ku Klux Klan Act)**, ch. 22, **17 Stat. 13**
*(Prohibition of deprivation of rights under color of state authority; accountability of officers acting without lawful power)*

**Jurisdiction and Removal Act of 1875**, ch. 137, **18 Stat. 470**
*(Federal jurisdiction over cases arising under the Constitution and laws of the United States)*

**Evarts Act of 1891**, ch. 517, **26 Stat. 826**
*(Structural allocation of appellate jurisdiction; preservation of original jurisdiction in constitutional matters)*

**Judicial Code of 1911**, ch. 231, **36 Stat. 1087**
*(Consolidation of judicial authority without enlargement of jurisdiction)*

**Rules Enabling Act of 1934**, ch. 651, **48 Stat. 1064**
*(Procedural rulemaking authority expressly prohibited from abridging substantive rights)*

**Judicial Code Revision Act of 1948**, ch. 646, **62 Stat. 869**
*(Reorganization only; no expansion of judicial or executive power)*

## I.    INTRODUCTION AND NATURE OF THE PROCEEDING

This proceeding is instituted to terminate an ongoing restraint of liberty imposed without lawful authority. Petitioner is presently subjected to intensive supervision, electronic monitoring, compelled reporting, and severe restrictions on movement and daily life under color of an Idaho judgment that no longer exists as a matter of law. The restraint complained of is not theoretical, anticipatory, or collateral; it is active, continuous, and enforced by executive officers who have identified no enacted authority permitting such custody absent a subsisting judgment.

Respondents continue to restrain Petitioner's liberty through intensive supervision and electronic monitoring despite the complete dismissal of the sole judicial cause giving rise to such restraint. Respondents have identified no enacted authority permitting executive custody absent a subsisting judgment. This ongoing detention is therefore unlawful as a matter of fact and law and must terminate immediately.

This Petition invokes the ancient and fundamental writ of **Habeas Corpus**, preserved and expanded by Congress to secure the release of any person restrained of liberty in violation of the Constitution or laws of the United States. The writ is employed here for its intended purpose: to compel the custodian to justify the fact of custody itself, not to excuse or regulate its conditions. Where no lawful cause is shown, discharge is mandatory.

This Petition further invokes **Quo Warranto** to require the Respondent to show by what authority the office of Director of the Idaho Department of Correction is being used to assert and execute custody over Petitioner. Where custody is exercised without a subsisting judgment or other

enacted grant of authority, the right to act is forfeited as a matter of law. Quo Warranto is not invoked to discipline conduct, but to test authority at its source and to extinguish it where it has failed.

This is not a collateral attack on administrative discretion, nor a request for modification of supervision, nor a plea for leniency. It is a direct challenge to the existence of lawful authority to restrain liberty at all. The Constitution does not permit executive custody by assumption, inference, or convenience. Liberty may be restrained only pursuant to lawfully issued judicial process grounded in enacted authority. When that authority terminates, custody must terminate with it.

This Court is called upon to decide a single, dispositive question: whether any enacted law authorizes continued custody of Petitioner after the dismissal of the sole judicial cause upon which such custody was predicated. If no such authority exists—and none has been identified— then continued restraint constitutes unlawful detention and must cease immediately.

## II.    STATEMENT OF CUSTODY AND STANDING

Petitioner is presently restrained of liberty by officers acting under color of Idaho authority. The restraint is actual, continuous, and coercive. It consists of intensive supervision, electronic monitoring through an ankle device affixed to Petitioner's body, compulsory reporting to probation officers, compelled submission to bodily testing, pre-approval of movement and daily activities, restriction of travel, limitation of association, mandated counseling, and enforced

control over employment. These restraints are enforced through threat of arrest and incarceration for noncompliance. As such, Petitioner is in custody in fact, regardless of nomenclature or administrative characterization.

Custody for purposes of habeas corpus does not require physical confinement within a jail or prison. Any restraint imposed by the state that significantly restricts freedom of movement and subjects the individual to continuous control constitutes custody. Petitioner's liberty is restrained on a daily basis by the Respondent's asserted authority, and Petitioner is not free to disengage from that restraint without facing immediate punitive consequences. The restraint is therefore custodial as a matter of fact and law.

The Respondent asserting custody over Petitioner is the Director of the Idaho Department of Correction, acting in an official capacity as the executive officer charged with executing and enforcing Idaho judgments and sentences. The custody imposed upon Petitioner is expressly derivative of Idaho authority and is acknowledged by supervising officers to arise from an Idaho judgment and its execution. No independent Montana judgment or sentence has been identified as the source of custody. Accordingly, the Director of the Idaho Department of Correction is the proper custodian for purposes of this Petition.

Petitioner has standing to seek relief because she is the direct subject of the restraint challenged herein. The injury to liberty is concrete, particularized, and ongoing. It is not speculative, hypothetical, or contingent upon future events. Each day of continued supervision, monitoring,

and coercive control constitutes a renewed deprivation of liberty. The relief sought—termination of unlawful custody—will redress the injury in full.

Petitioner does not concede the lawfulness of custody by compliance with its demands. Compliance has been compelled under threat of incarceration and does not constitute consent, waiver, or acquiescence. Petitioner has consistently challenged the authority to restrain her liberty and has produced documentary proof demonstrating the dismissal of the sole judicial cause upon which the restraint is predicated. Standing is therefore secure, immediate, and non-waivable.

Because Petitioner is presently restrained of liberty by an executive officer acting under color of state authority, and because the restraint persists absent a subsisting judgment or other enacted authorization, this Court possesses both the power and the duty to inquire into the legality of that custody and to order discharge where no lawful cause is shown.

### III.    JURISDICTIONAL STATEMENT

*(Enactment-Based; Non-Abstainable)*

This Court's jurisdiction arises from enacted authority and constitutional command, not from administrative consent, statutory convenience, or prudential doctrine. Congress established and preserved federal judicial power to inquire into unlawful restraints of liberty and to compel discharge where custody lacks lawful cause. That authority is direct, original, and mandatory.

Jurisdiction is grounded in the **Northwest Ordinance of 1787**, as re-enacted by the Act of August 7, 1789, which binds successor governments to the preservation of civil liberty and due process and prohibits deprivation of liberty except by the law of the land. That compact imposed enforceable limitations on territorial and state actors alike and preserved judicial oversight where liberty is restrained without lawful authority.

Jurisdiction is further conferred by the **Judiciary Act of 1789**, which created the federal courts and vested them with power to issue writs necessary to the exercise of their jurisdiction. From its inception, federal judicial power included the authority to test the legality of executive restraint and to compel justification for custody. The Act did not condition that power on exhaustion of state remedies or administrative process where liberty is presently restrained.

Congress expanded and made explicit this authority in the **Habeas Corpus Act of 1867**, which extended federal habeas jurisdiction to all persons restrained of liberty in violation of the Constitution or laws of the United States. That enactment removed any limitation confining habeas to federal prisoners or to narrow categories of detention. It commands federal courts to inquire into the cause of restraint whenever custody exists and to order discharge where lawful cause is absent.

Jurisdiction is reinforced by the **Civil Rights Act of 1866** and the **Enforcement Act of 1871**, which together prohibit deprivation of liberty under color of state law and provide a federal forum to restrain state officers who act without lawful authority. These enactments confirm that federal courts are not subordinate to state administrative processes when fundamental rights are at

stake, and that executive officers may be compelled to answer for unauthorized restraints of liberty.

The **Jurisdiction and Removal Act of 1875** further confirm federal jurisdiction over cases arising under the Constitution and laws of the United States, including challenges to state action that deprives persons of liberty without lawful authority. The enactment removed any doubt that federal courts possess original jurisdiction to adjudicate such controversies.

No later enactment has withdrawn or diminished this jurisdiction. The **Evarts Act of 1891**, the **Judicial Code of 1911**, the **Rules Enabling Act of 1934**, and the **Judicial Code Revision Act of 1948** reorganized judicial structure and procedure but expressly did not enlarge, restrict, or abridge substantive rights or jurisdiction. Procedural rules may not be used to defeat or delay the exercise of habeas jurisdiction where custody is unlawful as a matter of fact and law.

This jurisdiction is **non-abstainable**. Where a person is presently restrained of liberty without a subsisting judgment or other enacted authorization, no doctrine of comity, abstention, exhaustion, or administrative deference may override the constitutional duty to inquire and to discharge. Abstention presumes lawful jurisdiction elsewhere. Here, the existence of lawful authority is the very issue presented. To abstain would be to presume the conclusion and to sanction unlawful detention by delay.

This Court therefore has original and exclusive jurisdiction to hear this Petition, to require the Respondent to justify the fact of custody, and to order immediate termination of restraint where

no enacted authority is shown. Jurisdiction attaches upon the existence of custody and persists until liberty is restored.

### IV.    NATURE OF THE WRITS SOUGHT

*(Habeas Corpus and Quo Warranto)*

This proceeding invokes two complementary and historically distinct writs—**Habeas Corpus** and **Quo Warranto**—to confront a single structural defect: the ongoing restraint of liberty imposed and executed by officers who lack constitutional capacity to exercise judicial power.

### A. Habeas Corpus — Testing Custody Imposed Without Judicial Power

The writ of **Habeas Corpus** is employed here to test the legality of present custody. It does not inquire into administrative compliance, discretionary supervision, or the conditions imposed. It demands proof of lawful judicial authority to restrain liberty in the first instance.

Petitioner is presently restrained of liberty through intensive supervision and electronic monitoring enforced under threat of arrest and incarceration. That restraint is continuous, coercive, and executive in character. Habeas lies precisely for this circumstance. Custody exists whenever the State restrains freedom of movement and compels obedience under penalty of confinement, regardless of the terminology used to describe that restraint.

The restraint challenged herein does not arise from a valid exercise of judicial power. The judgment invoked as the source of custody was issued by an officer functioning in an

**administrative capacity**, not by a constitutionally vested judicial authority. The Director of the Idaho Department of Correction, as an executive administrator, likewise lacks constitutional power to impose or continue custody absent a valid judicial judgment issued by a constitutional court.

Habeas therefore compels the Respondent to justify not merely the continuation of custody, but the **existence of any lawful judicial authority capable of giving rise to custody at all**. Where custody is imposed or executed by administrative actors without constitutional judicial power, the restraint is unlawful as a matter of fact and law and must terminate immediately.

**B. Quo Warranto — Testing the Capacity to Exercise Judicial Authority**

The writ of **Quo Warranto** is invoked to test authority at its source. It requires the Respondent to show by what authority the office of Director of the Idaho Department of Correction is being used to exercise powers that are judicial in nature—namely, the restraint of liberty, the enforcement of conditions, and the threat of incarceration for noncompliance.

Quo Warranto lies not because of misconduct, but because of **usurpation of power**. The power to adjudicate, sentence, and restrain liberty belongs exclusively to constitutionally vested judicial courts. Administrative officers may execute lawful judgments; they may not originate, extend, or substitute for judicial power.

Here, the Respondent asserts custody derivative of a judgment issued outside a constitutional court and continues that custody through administrative mechanisms. Quo Warranto compels

the Respondent to demonstrate an enacted grant of authority permitting an administrative office to function as a de facto judicial actor. No such authority exists.

Where an administrative officer exercises powers reserved to constitutional courts, the authority to act is void ab initio. The right to restrain liberty under such circumstances is not merely forfeited—it never lawfully existed.

**C. Structural Consequence of Administrative Usurpation**

This case does not turn on dismissal alone, though dismissal independently extinguishes any arguable cause. It turns on a more fundamental defect: **the absence of constitutional judicial power at every stage giving rise to custody**.

An administrative judgment cannot confer judicial authority. An administrative office cannot cure that defect through execution or supervision. Where liberty is restrained without ever having passed through a constitutional court, custody is unlawful from inception and remains unlawful regardless of subsequent administrative action.

Habeas Corpus compels release from custody imposed without judicial power. Quo Warranto compels the cessation of authority exercised by administrative officers beyond constitutional limits. Together, they foreclose all presumptions of lawful power and require immediate termination of restraint.

### V.    STATEMENT OF UNDISPUTED FACTS

The following facts are established by official court records, probation records, and documentary exhibits and are not subject to reasonable dispute. These facts are stated for the sole purpose of establishing the existence, source, and continuation of custody and the absence of lawful judicial authority to impose it.

Petitioner is a private individual whose liberty is presently restrained through intensive supervision, electronic monitoring, and compulsory compliance with probationary controls enforced under threat of arrest and incarceration. These restraints include continuous ankle monitoring, mandatory reporting, pre-approval of movement and daily schedules, compulsory submission to bodily testing, mandatory counseling, and control over employment and travel. Petitioner is not free to disengage from these restraints without immediate punitive consequence.

On or about November 2025, Petitioner was subjected to a warrantless detention exceeding seventy-two hours. During this detention, probation officers met with Petitioner behind closed doors and conducted questioning. Petitioner did not concede jurisdiction, consent to supervision, or waive any rights during this encounter. No judicial hearing authorizing continued detention or escalated supervision was conducted prior to the imposition of restraints.

Petitioner was subsequently released upon the posting of a five-thousand-dollar bail bond. Upon release, Petitioner was placed on Intensive Supervision Program ("ISP"), including electronic

monitoring, despite the absence of any hearing before a constitutional court establishing lawful judicial cause for such restraint.

The asserted basis for ISP supervision was a criminal proceeding originating in the State of Idaho and executed through interstate administrative mechanisms. The supervision presently imposed upon Petitioner in Montana has been expressly acknowledged by supervising officers to be derivative of Idaho authority and dependent upon an Idaho judgment.

On January 9, 2026, the Montana case cited as the immediate basis for ISP enforcement was formally dismissed by the prosecuting authority. The dismissal terminated the only judicial cause identified by probation officers as giving rise to heightened supervision. Bond associated with that matter was exonerated. No new judicial proceeding authorizing continued custody was initiated.

On January 14, 2026, Petitioner appeared as required at a scheduled probation meeting. Petitioner presented a certified copy of the Order of Dismissal to the supervising probation officer and inquired how the dismissal affected continued ISP custody. The probation officer confirmed that Petitioner was on supervision in Montana via transfer from Idaho and that ISP had been imposed because of the dismissed case. The probation officer stated that she did not know how the dismissal affected ISP and left to consult a superior officer.

Upon returning, the probation officer informed Petitioner that the dismissal "does not affect ISP" and that Petitioner would remain subject to intensive supervision and electronic monitoring. No

judicial order, judgment, or enacted authority authorizing continued custody was produced or identified at that time.

Since dismissal of the Montana case, Petitioner has remained fully compliant with all imposed conditions under compulsion. Petitioner has submitted to repeated random drug testing, all of which have yielded negative results. Petitioner has complied with all reporting requirements, movement restrictions, counseling mandates, and employment directives imposed by probation officers. Compliance has been compelled by threat of incarceration and does not constitute consent or waiver.

At no point has Petitioner been brought before a constitutional court to adjudicate the legality of continued custody following dismissal. No valid judicial judgment issued by a constitutional court authorizing ongoing restraint of liberty has been identified. All supervision presently imposed is executed through administrative actors relying on assumed authority rather than enacted judicial power.

These facts establish that Petitioner remains restrained of liberty by administrative officers acting under color of Idaho authority without a subsisting judgment issued by a constitutional court and without any demonstrated enacted authority permitting such restraint.

## VI.    CONSTITUTIONAL AND ENACTED AUTHORITY FRAMEWORK

*(Source and Limits of Judicial and Executive Power)*

The authority to restrain liberty is among the most extraordinary powers exercised by government. Under the Constitution and the enacted laws of Congress, that power is narrowly confined, carefully separated, and jealously guarded. Liberty may be restrained only through the exercise of **judicial power**, vested in constitutional courts, and executed only pursuant to lawfully issued judicial process grounded in enacted authority.

### A. Source of Judicial Power

The **Preamble to the Constitution** declares that the People established the Constitution to secure the blessings of liberty. All governmental power affecting liberty is therefore delegated, limited, and conditional. No officer or office may restrain liberty except as expressly authorized by law consistent with that purpose.

The **Judiciary Act of 1789** created the federal judicial system and vested judicial power exclusively in courts constituted under Article III. That Act did not vest judicial power in administrative bodies, executive officers, or hybrid tribunals. The power to adjudicate guilt, impose sentence, and authorize restraint of liberty belongs only to constitutional courts exercising judicial power.

The **Northwest Ordinance of 1787**, re-enacted in 1789, further secured this principle by guaranteeing that no person shall be deprived of liberty except by the judgment of peers or the law of the land. This compact bound territorial and successor governments alike and prohibited deprivation of liberty by executive or administrative fiat.

## B. Limits on Executive and Administrative Power

Executive officers are empowered to **execute** lawful judgments; they are not empowered to **create, extend**, or **substitute for** judicial authority. The Director of the Idaho Department of Correction is an executive administrator. The office exists to carry out judgments lawfully issued by courts; it possesses no independent constitutional authority to adjudicate, sentence, or restrain liberty absent such a judgment.

The **Rules Enabling Act of 1934** expressly prohibits procedural mechanisms from abridging, enlarging, or modifying substantive rights. No administrative rule, supervision policy, compact procedure, or internal guideline may supply authority where none exists in enacted law. Procedure cannot cure a jurisdictional defect.

The **Judicial Code Revision Act of 1948** reorganized statutory form but did not enlarge executive power or diminish constitutional limits. No revision transformed administrative officers into judicial actors or authorized executive custody without judicial judgment.

## C. Habeas as the Constitutional Backstop

The **Habeas Corpus Act of 1867** confirms that whenever a person is restrained of liberty in violation of the Constitution or laws of the United States, federal courts must inquire into the cause of restraint. The Act recognizes that unlawful custody may arise not only from improper judgments, but from **acts taken without judicial power at all**.

Where custody is imposed or continued by an officer lacking constitutional capacity to exercise judicial power, the restraint is unlawful from inception. Habeas lies to compel release in such circumstances because no lawful cause can be shown.

## D. Quo Warranto and Authority Forfeiture

The **Enforcement Act of 1871** preserves the principle that officers acting under color of state law are accountable when they exceed lawful authority and deprive persons of liberty. Quo Warranto lies to test whether an office is being used to exercise powers not lawfully conferred.

When an administrative office is used to impose or continue custody absent judicial authority, the right to act is void. Authority exercised beyond constitutional limits is not merely erroneous; it is nonexistent. Acts dependent upon such authority fall with it.

## E. Structural Consequence

Taken together, the Constitution and enacted laws establish a rigid framework:

- Judicial power resides only in constitutional courts.

- Executive officers may execute judgments, not replace them.

- Administrative mechanisms cannot generate authority.

- Liberty restrained without judicial power is unlawful per se.

Where, as here, custody is imposed and continued by administrative actors without a subsisting judgment issued by a constitutional court, no presumption of legality may arise. The absence of judicial power is fatal. Custody must terminate immediately.

## VII.    IDENTIFICATION OF PRESUMPTIONS ASSERTED BY RESPONDENT

The continued restraint of Petitioner's liberty rests entirely upon a series of unproven presumptions substituted for enacted authority and judicial power. These presumptions are not supported by constitutional text, legislative enactment, or valid judicial judgment. Each is identified below for the purpose of exposing the precise point at which assumption has replaced lawful proof.

Presumption One: That Administrative Execution May Substitute for Judicial Power Respondent presumes that an executive administrator may restrain liberty through supervision, electronic monitoring, compelled reporting, and threat of incarceration without producing a valid judgment issued by a constitutional court that authorizes the restraint. This presumption treats executive implementation as sufficient proof of lawful judicial cause and shifts the burden away from Respondent to justify custody with an actual lawful source. A custodian's ability to enforce conditions is not proof of lawful authority to impose custody. Execution cannot exceed origin.

*Presumption Two: That the Instrument Called a "Judgment" Is Constitutionally Valid Without Proof of Constitutional Judicial Power*

Respondent presumes that the existence of a document labeled a "judgment" conclusively establishes lawful judicial authority to restrain liberty, without proving that it was issued by a constitutionally vested court exercising judicial power and, in a manner, consistent with the Bill of Rights. This presumption substitutes nomenclature and administrative reliance for constitutional validity.

A label is not lawful cause. A purported judgment is not self-validating.

Presumption Three: That Custody Continues by Default Unless Petitioner Forces Its Termination

Respondent presumes that once restraint is imposed, it may continue as a continuing condition of control without a subsisting judicial cause shown on demand. This presumption reverses the burden of justification by treating custody as self-perpetuating and requiring the restrained person to prove a negative, rather than requiring the custodian to prove lawful cause. Custody does not sustain itself. The custodian must be able to show lawful cause at the moment custody is challenged.

Presumption Four: That Compelled Compliance Equals Consent, Waiver, or Acquiescence

Respondent presumes that Petitioner's compelled compliance with supervision requirements— reporting, electronic monitoring, schedule pre-approval, counseling mandates, and bodily testing—constitutes consent to custody or waiver of constitutional rights. This presumption converts coerced obedience under threat of incarceration into voluntary submission and treats survival behavior as legal concession.

Compliance under compulsion is not consent. Coercion cannot manufacture waiver.

Presumption Five: That Interstate or Administrative Supervision Mechanisms Create

Independent Custodial Authority

Respondent presumes that interstate transfer, compact procedure, or administrative

supervision frameworks independently authorize custody—such that supervision and restraint

may continue even when the originating judicial authority is constitutionally defective or no

subsisting lawful cause is produced. This presumption treats administrative pathway as source

of power and confuses execution logistics with lawful authority.

Interstate mechanisms may at most execute valid authority; they cannot create it, enlarge it, or

cure its absence.

Presumption Six: That Custody May Be Defended by Recharacterizing an Authority Challenge as a

Conditions Dispute

Respondent presumes that challenges to the legality of custody may be deflected by reframing

them as disputes over supervision conditions, administrative discretion, or compliance

mechanisms, rather than as challenges to the existence of lawful authority to restrain liberty at

all.

This presumption attempts to insulate the source of custody from judicial review by collapsing

habeas into administrative oversight. It ignores that habeas corpus lies to test the legality of

custody itself, not the manner of its administration. Where authority fails, no set of conditions

can cure the defect.

### VIII.    REBUTTAL OF PRESUMPTIONS AND FAILURE OF PROOF

This Section rebuts each identified presumption by returning the burden to Respondent and demonstrating the absence of lawful proof. Where Respondent cannot produce enacted authority or a constitutionally valid judicial judgment, the presumption collapses and custody must terminate.

**Rebuttal to Presumption One: Administrative Execution Cannot Substitute for Judicial Power**

Respondent bears the burden to produce a valid judgment issued by a constitutional court authorizing the restraint imposed. Administrative execution—supervision, monitoring, reporting, and enforcement—does not establish lawful cause. Execution presupposes origin. Where Respondent produces no constitutionally issued judgment authorizing present custody, execution proves nothing. Absent proof of judicial power at the source, administrative enforcement is ultra vires and void.

**Rebuttal to Presumption Two: A Document Labeled "Judgment" Is Not Self-Validating**

Respondent must prove that the instrument relied upon as a "judgment" was issued by a constitutionally vested court exercising judicial power consistent with the Bill of Rights. Nomenclature and administrative reliance are insufficient. Where Respondent cannot establish constitutional issuance and continuing force, the purported judgment supplies no lawful cause for custody. The absence of proof defeats the presumption.

**Rebuttal to Presumption Three: Custody Does Not Continue by Default**

Custody must be justified at the moment it is challenged. Respondent must show a **subsisting** judicial cause authorizing present restraint. Where the asserted cause has been dismissed or is constitutionally defective, custody cannot persist by inertia. The burden is Respondent's; failure to show present lawful cause compels discharge.

**Rebuttal to Presumption Four: Compelled Compliance Is Not Consent or Waiver**

Respondent cannot convert compelled compliance into consent. Reporting, electronic monitoring, schedule pre-approval, counseling mandates, and bodily testing are enforced under threat of incarceration. Coercion negates waiver. Respondent produces no voluntary, informed relinquishment of constitutional rights; therefore, no consent exists and no waiver may be inferred.

**Rebuttal to Presumption Five: Administrative or Interstate Mechanisms Create No Authority**

Respondent must identify enacted authority granting independent custodial power to administrative or interstate mechanisms. None exists. Such mechanisms may execute valid authority only; they cannot create, enlarge, or cure the absence of judicial power. Where origin fails, all derivative execution fails. Respondent's inability to produce an originating, constitutionally valid authority defeats the presumption.

**Rebuttal to Presumption Six: Authority Cannot Be Deflected as a Conditions Dispute**

Respondent cannot avoid scrutiny by reframing this challenge as one to conditions or administration. Habeas lies to test the legality of custody itself. Where authority is absent,

conditions are irrelevant. Respondent must justify the existence of power to restrain liberty at all; failure to do so requires immediate termination of custody.

**Failure of Proof.**

Respondent has identified no enacted authority and produced no constitutionally valid, subsisting judgment authorizing present custody. Each presumption relied upon collapses for want of proof. Where authority is not shown, detention is unlawful as a matter of fact and law and must terminate immediately.

### IX.    IMMEDIATE UNLAWFULNESS OF CONTINUED RESTRAINT

The continued restraint of Petitioner's liberty is unlawful **now**, not contingently, not prospectively, and not subject to administrative adjustment. The absence of lawful authority is complete and dispositive. No further factual development, discretionary review, or procedural sequencing can cure the defect.

Petitioner is presently subjected to intensive supervision, electronic monitoring, compelled reporting, bodily testing, and restrictions on movement and daily life. These restraints are enforced through threat of arrest and incarceration. They constitute custody in fact. Custody without lawful authority is detention.

Respondent has failed to produce a constitutionally valid judgment issued by a constitutional court authorizing present restraint. Respondent has further failed to identify any enacted law

conferring independent authority upon an administrative office to impose or continue custody absent such a judgment. Where no lawful cause exists, custody is unlawful per se.

The Constitution does not permit executive restraint of liberty by assumption, convenience, or administrative persistence. Liberty may be restrained only through judicial power lawfully exercised. Where judicial power is absent, continued restraint is not merely erroneous; it is void.

The unlawfulness of continued custody is not mitigated by compliance, supervision history, administrative labeling, or the passage of time. Each day of restraint without authority constitutes a renewed deprivation of liberty. Delay compounds the constitutional injury.

Because Respondent lacks constitutional capacity to exercise judicial power and has produced no subsisting judgment authorizing custody, continued restraint of Petitioner's liberty is unlawful as a matter of fact and law. Immediate termination of all supervision, monitoring, and restraint is required.

### X.    SUMMARIZATION AND DEMAND FOR TERMINATION OF CUSTODY

This proceeding establishes, by undisputed fact and controlling constitutional and enacted authority, that Petitioner is presently restrained of liberty without lawful judicial power. The restraints imposed—intensive supervision, electronic monitoring, compelled reporting, bodily testing, restriction of movement, and threat of incarceration—constitute custody in fact. Custody so imposed is an exercise of judicial power and is unlawful unless grounded in a constitutionally valid judgment issued by a constitutional court pursuant to enacted authority.

Respondent has failed to produce any constitutionally valid judgment authorizing present custody. Respondent has identified no enacted law, **nor can any be shown to exist**, that confers authority upon an administrative officer to impose or continue restraint of liberty in the absence of a constitutionally valid judicial judgment; **such authority is alien to the Constitution, repugnant to the separation of powers, and unknown to the enacted laws of Congress**.

Executive administration cannot originate, extend, or replace judicial power. Administrative convenience, interstate procedure, supervision policy, or historical practice cannot supply authority where the Constitution withholds it. Where judicial power has not lawfully attached, execution is a nullity. Custody imposed without judicial power is void from inception and remains void regardless of duration, labeling, or compliance compelled under threat.

Each presumption invoked to justify continued restraint has been identified and conclusively rebutted. Respondent has failed its burden to show lawful cause at the moment custody is challenged. In the absence of such cause, detention is unlawful per se. The Constitution tolerates no discretion to continue restraint where authority is absent.

Accordingly, all supervision, electronic monitoring, reporting requirements, bodily testing, movement restrictions, and derivative enforcement actions imposed upon Petitioner under color of Idaho authority are void and must cease immediately. Petitioner demands immediate and complete discharge from all custody and restraint.

### XI.    NOTICE-TRIGGER AND ENFORCEMENT CONSEQUENCE CLAUSE

**Notice and Trigger.**

Service of this Petition, or actual notice thereof, **triggers an immediate, non-discretionary duty** upon Respondent and all persons acting in concert or derivatively to (a) cease all custodial enforcement, (b) remove all electronic monitoring devices, (c) terminate all supervision and reporting requirements, and (d) refrain from any further restraint of Petitioner's liberty absent a constitutionally valid judicial order issued by a constitutional court.

**Production or Cessation.**

Upon notice, Respondent must **either** (i) produce, without delay, a constitutionally valid judgment and enacted authority authorizing present custody, **or** (ii) immediately terminate all restraint. **Silence, delay, or recharacterization constitutes failure of proof and mandates cessation.**

**Consequences of Non-Compliance.**

Any continuation of restraint after notice, without production of lawful authority, constitutes **knowing and willful deprivation of liberty under color of law**, renders each enforcing act **ultra vires**, and subjects the actor(s) to all available constitutional and enacted remedies. Continued enforcement after notice shall be deemed a **separate and ongoing violation**, accruing daily.

**Non-Waiver.**

No act of compelled compliance, survival behavior, or administrative interaction after notice shall be construed as consent, waiver, or acquiescence. All rights are preserved.

## XII.    CERTIFICATION

Petitioner certifies that this Petition is brought in good faith to vindicate fundamental liberty interests secured by the Constitution and enacted laws of the United States. This proceeding is not filed for delay, harassment, or tactical advantage, but to compel the cessation of ongoing unlawful restraint of liberty.

Petitioner further certifies that all factual statements herein are made to the best of Petitioner's knowledge, information, and belief, based upon official records and direct personal experience, and are presented solely to establish the existence and unlawfulness of custody.

## XIII.    VERIFICATION

I, Courtney Anne Kelton, being of the age of majority and competent to testify, declare and affirm that the factual statements set forth in this Petition are true and correct to the best of my personal knowledge, information, and belief.

This verification is made voluntarily and without coercion, for the purpose of establishing the factual basis of this Petition and invoking the jurisdiction and duty of this Court to inquire into the legality of the restraint of my liberty.

Executed on: January 16, 2026

Courtney Anne Kelton
Petitioner, sui juris

(Contact information on file)

**XIV.   VALIDATION**

*This Petition is grounded exclusively in the Constitution of the United States, the Preamble, the Bill of Rights, and the enacted laws of Congress identified herein. No reliance is placed upon administrative rulemaking, procedural convenience, or implied authority.*

*All assertions of jurisdiction, custody, and authority challenged herein are required to be proven by the Respondent through enacted law and constitutionally valid judicial process. In the absence of such proof, authority fails and custody must terminate.*

*This instrument is submitted as a formal demand for discharge from unlawful restraint and as notice that continued custody absent lawful authority constitutes an ongoing violation of fundamental rights secured by the Constitution.*

## CERTIFICATE OF SERVICE

I, Courtney Anne Kelton, being of the age of majority and competent to testify, hereby certify that on the date indicated below, I caused a true and correct copy of the foregoing Petition for Writ of Habeas Corpus and Writ of Quo Warranto, together with all accompanying papers, exhibits, motions, and proposed orders, to be transmitted to the Clerk of Court for the District Court of the United States for the District of Idaho for initial docketing, by Certified First-Class Mail number 9589 0710 5270 1110 8760 70, Return Receipt Requested Signature Required number 9590 9402 8824 4005 7604 53 (USPS Form PS 3811).

At this stage, service is affected upon the Court only for purposes of docketing and judicial review. No representation is made that Respondents have been served.

Petitioner respectfully notes that, upon docketing and as may be ordered by the Court, service upon any Respondent(s) shall be issued and directed by the Clerk of Court in the manner and to the extent required by judicial order.

This Certificate of Service is provided solely to attest to the method of filing and transmission to the Court and does not constitute consent to jurisdiction, waiver of rights, or submission to any administrative or statutory process. All rights are expressly reserved.

Executed on: January 16, 2026

Courtney Anne Kelton
Petitioner, sui juris
540A MacGregor Road
Belgrade, Montana 59714
(406) 422-3858
c.k.estateandtrust@proton.me